# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GARY ADAM MILLER,** | : | Civil No. 4:10-CV-51 |
| | : | |
| Petitioner, | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **MARIROSA LAMAS, et al.,** | : | |
| | : | |
| Respondents. | : | |

## MEMORANDUM ORDER

### I.  Introduction

This is a *pro se* habeas petition brought by a state prisoner, Gary Miller, challenging his state guilty plea conviction. (Doc. 1) On January 6, 2011, this case was referred to the undersigned for pre-trial management. (Doc. 27.) Upon reviewing this case we noted that, along with his petition, Miller had filed a motion to stay state post-conviction relief act proceedings pending the completion of this federal case. (Doc. 21.) After reviewing this motion, on January 10, 2011, we entered a memorandum order which denied this request for a stay of state PCRA proceedings, but directed the parties to provide the Court with a status update regarding those state proceedings. (Doc. 29.)

1

The Petitioner, Gary Miller, has now filed a motion and brief, requesting that we reconsider this order denying his request to stay these state proceedings. (Doc. 34.) For the reasons set forth below, we will deny this request.

## II. Discussion

### A. Motions to Reconsider–the Legal Standard

The legal standards that govern motions to reconsider are both clear, and clearly compelling. It is well-settled that, "[t]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Therefore, typically such a motion should only be granted in three, narrowly defined circumstances, where there is either : "(1) [an] intervening change in controlling law, (2) availability of new evidence not previously available, or (3) need to correct a clear error of law or prevent manifest injustice". Dodge v. Susquehanna Univ., 796 F.Supp. 829, 830 (M.D. Pa. 1992 ). Thus, it is clear that a party's mere disagreement with the court does not translate into the type of clear error of law which justifies reconsideration of a ruling. Dodge, 796 F.Supp. at 830. Furthermore, "[b]ecause federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Casualty Co. v. Diversified Indus., Inc., 884 F.Supp. 937, 943 (E.D. Pa. 1995). Moreover, it is evident that a

motion for reconsideration is not a tool to re-litigate and reargue issues which have already been considered and disposed of by the court. Dodge, 796 F.Supp. at 830. Rather, such a motion is appropriate only where the court misunderstood a party or where there has been a significant change in law or facts since the court originally ruled on that issue. See Above the Belt, Inc. v. Mel Bohannon Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983).

### B. We Should Not Re-Consider Our Discretionary Denial of Miller's Request to Stay State PCRA Proceedings

Judged against these exacting standards, we find that Miller has not provided the type of compelling grounds which would justify reconsideration of our prior ruling that the state PCRA proceedings, which may afford Miller the precise relief which he seeks in this federal habeas corpus proceeding, should not be stayed. Quite the contrary, we remain convinced that the legal and equitable considerations that guide us in this field all continue to caution in favor of permitting Miller to litigate these claims in the state courts, which stand ready to hear them.

At the outset, we note that this conclusion is compelled by the law governing federal habeas corpus review of state criminal convictions. Under the law, state prisoners like Miller who seek to invoke the power of this Court to issue a writ of

3

habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> **(A)** the applicant has exhausted the remedies available in the courts of the State;
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b).

As this statutory text implies, Miller must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. Among the procedural prerequisites to a federal habeas corpus petition by a state prisoner is a requirement that the Petitioner " has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b). Indeed, instances where a state prisoner has failed to exhaust the legal remedies available to him in the state

courts, federal courts typically will refuse to entertain a petition for habeas corpus. See Whitney v. Horn, 280 F.3d. 240, 250 (3d Cir. 2002).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). As the Supreme Court has aptly observed: "a rigorously enforced total exhaustion rule" is necessary in our dual system of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation. Rose v. Lundy, 455 U.S. 509, 518 (1982). Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid the federal courts in their review of a § 2254 petition. Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995). A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts. Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed

5

in seeking state relief, since it is well-settled that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court." Parker v.Kelchner, 429 F.3d 58, 63 (3d Cir. 2005).

Because of this strong policy favoring exhaustion of state remedies, we continue to believe that we should not frustrate those policies by staying the state Post Conviction Relief Act proceedings which are pending the Court of Common Pleas of Perry County. Instead, we continue to urge the parties to continue to move forward with these proceedings.

We recognize that in certain cases where the state proceedings are plagued by extreme and persistent delays, it may be appropriate to excuse this exhaustion requirement. In this regard, it is clear that, to excuse exhaustion of state remedies, a petitioner must point to extensive delays in the state courts that span years. As the United States Court of Appeals for the Third Circuit has aptly observed:

> Under ordinary circumstances, a federal court may not entertain a petition for a writ of habeas corpus unless the petitioner has first presented each of his claims to the state's highest tribunal. See 28 U.S.C. §§ 2254(b), (c); Rose v. Lundy, 455 U.S. 509, 515-16(1982). Exhaustion, however, is not a jurisdictional matter but a matter of comity. See Story v. Kindt, 26 F.3d 402, 405 (3d Cir.1994). Federal courts need not defer to the state judicial process when there is no appropriate remedy at the state level or when the state process would frustrate the use of an available remedy. *Id.*; 28 U.S.C. § 2254(b)(1)(B). We have held that "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively

> unavailable." Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir.1986). The existence of an inordinate delay does not automatically excuse the exhaustion requirement, but it does shift the burden to the state to demonstrate why exhaustion should still be required. Story, 26 F.3d at 405 (noting that this burden is "difficult to meet").

Lee v. Stickman, 357 F.3d 338, 341 (3d Cir. 2004).

In defining what type of delay constitutes an "inordinate delay" which may justify excusing the exhaustion requirement, the courts have looked at delays of years, not months. Thus, as the appellate court has explained:

> We stated in Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir.1986), that "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable." In that case, thirty-three months had passed after the Petitioner's PCRA filing without resolution. Id. This, we found, excused the petitioner's failure to exhaust his state court remedies. Id. at 356. The thirty-three month delay in Wojtczak remains the shortest delay held to render state collateral proceedings ineffective for purposes of the exhaustion requirement.

Cristin v. Brennan, 281 F.3d 404, 411 (3d Cir. 2002)(refusing to excuse exhaustion in the face of 27 month delay). See, e.g., Coss v. Lackawanna County Dist. Att'y, 204 F.3d 453, 460 (3d Cir.2000) (en banc) (seven year delay), rev'd on other grounds, 532 U.S. 394 (2001); Story v. Kindt, 26 F.3d 402, 406 (3d Cir.1994) (nine year delay).

In this case, we have now had the benefit of status reports submitted by the parties. (Docs. 33 and 35.) While those status reports present conflicting views

7

concerning the progress of this state litigation, it is evident that during the past year the state courts have taken a conscientious approach to addressing Miller's concerns, and that allowing Miller to exhaust his state remedies may obviate the need for federal litigation, and will certainly inform any federal litigation by permitting the state courts to develop a full record in this matter.

Specifically, these status reports show that Miller may have endeavored to file a Post Conviction Relief Act petition in the Court of Common Pleas of Perry County in the Fall of 2003. While there are disputes concerning the initial handling of this petition, once Miller renewed his petition in January of 2010, the state court has responded to Miller's requests in a consistent, and prompt, fashion. (Doc. 35.)Thus, after receiving a battery of *pro se* pleadings from Miller, in May 2010, the court scheduled a conference with the Petitioner. (Id.) This conference was held on July 21, 2010, and at this conference the court attempted to address some of Miller's concerns. (Id.) It appears that the state court is continuing to address matters in this case. In fact, on September 15, 2010, the court entered an order ruling upon some of Miller's requests. (Id.) Most recently on January 13, 2011, the court appointed counsel to assist Miller in framing and litigating the issues presented by his 2010 PCRA petition. (Id.) Thus, during the past months, there have been significant developments in this protracted state litigation. Given these developments, we do not

8

believe that the interests of the Petitioner, the Commonwealth, or the interests of justice would be served by staying these state proceedings.

In addition to the exhaustion requirements set by federal habeas corpus law, which caution against a stay of state proceedings, this stay request continues to run afoul of another settled tenet of federal law, the Younger abstention doctrine. This doctrine is also inspired by basic considerations of comity that are fundamental to our federal system of government. "Younger abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding. See Younger v. Harris, 401 U.S. 37, 41 (1971)." Kendall v. Russell, 572 F.3d 126, 130 (3d Cir. 2009). Under the Younger doctrine:

> A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir.2005) (citing Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). As noted earlier, the Younger doctrine allows a district court to abstain, but that discretion can properly be exercised only when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. Matusow v. Trans-County Title Agency, LLC, 545 F.3d 241, 248 (3d Cir.2008).

Kendall v. Russell, 572 F.3d at 131.

Once these three legal requirements for Younger abstention are met, the decision to abstain rests in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004). Moreover, applying these standards, federal courts frequently abstain from hearing matters which necessarily interfere with on-going state criminal cases. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002). Thus, entirely aside from the exhaustion requirement which applies generally to habeas petitioners, the Younger doctrine also cautions against staying these state proceedings.

In this case, we find that the actions taken by the state courts to address Miller's 2010 PCRA petition demonstrate that the requirements of Younger abstention are met here, since: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford Miller an adequate opportunity to raise his federal claims. Therefore, consistent with the Younger doctrine, and the exhaustion rule generally applicable to habeas corpus proceedings involving state inmates, we continue to believe that a stay of state proceedings would not be appropriate. Nonetheless we are mindful of the delay which has occurred in these proceedings, and recognize the

importance of finality in this litigation. Accordingly, we will attempt to address these concerns in a way which fosters comity, while ensuring a prompt resolution of this matter, in the report and recommendation which we will file with the district court in this case.

### III. Conclusion

For the foregoing reasons, the Petitioner's motion to reconsider Petitioner's motion to stay state PCRA proceedings (Doc. 34) is DENIED.

So ordered, this 2d day of February, 2011.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
