## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARY ADAM MILLER, | : | Civil No. 4:10-CV-51 |
| | : | |
| Petitioner, | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| MARIROSA LAMAS, et al., | : | |
| | : | |
| Respondents. | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

One of the statutory prerequisites to a state prisoner seeking habeas corpus relief in federal court is that the prisoner must "exhaust[] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The instant case presents a model of a mixed or partially unexhausted petition, since all of the parties concede that there is still pending in the state courts an unresolved state court petition brought under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. §§ 9541 et seq, ("PCRA"), which raises issues that are identical to some of those set forth in Miller's federal habeas corpus petition..

In light of the fact that this is undeniably an unexhausted federal habeas petition, the question before this Court is how best to address what is currently a premature and procedurally flawed petition. For the reasons set forth below, it is recommended that this is a case where the proper course of action would be to stay the

petition and hold it in abeyance pending completion of the state criminal litigation. However, in recognition of the delays which have previously plagued this state court litigation, it is further recommended that the parties be required to provide status reports every 90 days on the progress of this state PCRA litigation so this Court can make an informed judgment regarding whether to excuse this exhaustion requirement at some time in the future.

## II.    <u>Statement of Facts and of the Case</u>

With respect to this petition it appears that this matter arises out of a home-invasion robbery which occurred on December 22, 2000, when, according to the Respondents,  Miller and a co-defendant invaded the home of the adult married victims and their five minor children, stripped a 9 year-old child naked, held a knife to the child's throat, and then stole cash, a check and a vehicle before fleeing. (Doc. 14, p.6.) Apprehended after a police pursuit, it is alleged that Miller confessed to his involvement in these events during a hospital interview.(<u>Id</u>.)

Charged with multiple counts of kidnaping, robbery, terroristic threats, burglary and theft, Miller executed a negotiated, counseled plea agreement to three counts of robbery, one count of conspiracy to commit robbery, one count of robbery of a motor vehicle, one count of burglary, one count of kidnaping, one count of interference with the custody of children, one count of theft by unlawful taking, three counts of

terroristic threats, and two counts of unlawful restraint. As part of this plea agreement, Miller agreed to the imposition of a sentence of twenty to forty years imprisonment and the Commonwealth agreed to dismiss the additional charges lodged against him.

According to the Respondents, prior to the entry of this guilty plea, Miller's counsel took steps to ensure that his client understood the consequences of this plea. Specifically, counsel requested and obtained funds for a psychological evaluation to determine competency and sanity. Only after that report of the examining expert indicated no basis to challenge either his competency or his sanity, did Miller enter into this plea agreement. (Id., p.7)

On June 15, 2001, Miller entered his guilty plea to these charges pursuant to the plea agreement entered into by the parties in this case. (Id.) As part of these proceedings, Miller executed a written guilty plea colloquy in addition to orally tendering a plea during a trial court colloquy. On July 12, 2001, Miller was sentenced for his role in this home invasion robbery and kidnaping, receiving the twenty to forty year jail term previously specified in his plea agreement with the Commonwealth. (Doc. 15-2, ¶4.)

Miller then appealed this conviction and sentence to the Pennsylvania Superior Court, arguing that his guilty plea colloquy was defective and that his trial counsel ineffective in failing to move to allow him to withdraw this guilty plea. (Doc 15-5.)

On April 24, 2002, the Superior Court affirmed Miller's conviction and sentence, rejecting his claims that his guilty plea colloquy was defective and his trial counsel ineffective in failing to move to withdraw this guilty plea. (Doc. 15-15.) Miller sought leave to appeal this ruling to the Pennsylvania Supreme Court, which denied his petition for allowance of appeal on September 24, 2002. (Doc. 15-14.) With the denial of this petition by the Pennsylvania Supreme Court, Miller's direct state appeal of this conviction and sentence drew to a close.

With his direct appeals exhausted, Miller then began to pursue relief in the state courts through a post-conviction relief action petition. This petition remains pending in the state courts and much of the procedural history of this unresolved petition is still unclear. For example, Miller claims to have filed a petition in a timely manner in September, 2003, although the state court docket shows no record of a filing prior to October,,2003. This confusion, which marked Miller's state PCRA petition at its inception, persisted for a number of years, with Miller lodging various *pro se* filings which were not initially acted upon by the state court.

Ultimately, the confusion surrounding Miller's *pro se* state court pleadings was clarified in January of 2010, when Miller filed this federal habeas corpus petition, and concurrently filed a second amended PCRA petition in the Court of Common Pleas of Perry County. (Docs. 1, 15-4.) Once Miller renewed his state PCRA petition in

January of 2010, the state court responded to Miller's requests in a consistent, and prompt, fashion. (Doc. 35.)Thus, after receiving a battery of *pro se* pleadings from Miller, in May, 2010, the Court scheduled a conference with the Petitioner. (Id.) This conference was held on July 21, 2010, and at this conference the Court attempted to address some of Miller's concerns. (Id.) It appears that the state court is continuing to promptly address matters in this case. In fact, on September 15, 2010, the Court entered an order ruling upon some of Miller's requests. (Id.) Most recently, on January 13, 2011, the state court appointed counsel to assist Miller in framing and litigating the issues presented by his 2010 PCRA petition. (Id.)

While Miller and the Commonwealth Respondents have been actively litigating this state PCRA petition, they have also briefed the issues raised by Miller in his pending federal habeas corpus petition. (Docs. 1, 14, 15, and 23.) These submissions reveal that many of the issues presented in this federal habeas corpus petition also appear to be the subject of Miller's pending state PCRA litigation. Indeed, Miller's submissions in this federal case closely parallel the arguments made in his state PCRA petition. In fact, the traverse filed by Miller in this federal habeas corpus proceeding expressly incorporates by reference the claims made in Miller's unresolved second amended PCRA petition which is still pending in the state courts. (Doc. 23, p.34.) Thus, Miller himself acknowledges that there is a significant, and substantial overlap

between the legal issues presented in this federal habeas petition, and those issues currently pending before the state courts on Miller's 2010 second amended state PCRA petition.

As part of its response to this federal habeas petition (Doc. 14), the Commonwealth argues that with respect to these common issues in the federal and state petitions, the state PCRA remedies are plainly unexhausted in this case at present. (Id.) Accordingly, the Commonwealth urges us to dismiss this petition as unexhausted. Therefore, this exhaustion issue, a threshold prerequisite to consideration of the merits of Miller's petition, is now ripe for consideration by the Court. For the reasons set forth below, it is recommended that further proceedings in this case be stayed, and held in abeyance, pending completion of the related state court litigation on Miller's PCRA petition.

II.     **Discussion**

**A. State Prisoner Habeas Relief–The Legal Standard.**

A state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> **(a)** The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on

the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

**(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

**(A)** the applicant has exhausted the remedies available in the courts of the State;

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b).

### (1.) <u>Substantive Standards For Habeas Petitions</u>

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, a petition must satisfy exacting substantive standards to warrant relief. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results

in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See, e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Priester v. Vaughan, 382 F.3d 394, 401-02 (3d Cir. 2004).

### (2). Procedural Thresholds for Section 2254 Petitions.

### (a). Exhaustion of State Remedies.

Furthermore, state prisoners seeking relief under Section 2254 must also satisfy specific, and precise, procedural standards. Among these procedural prerequisites is a requirement that the petitioner " has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b). In instances where a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus. See Whitney v. Horn, 280 F.3d. 240, 250 (3d Cir. 2002).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). As the Supreme Court has aptly observed: "a rigorously enforced total exhaustion rule" is necessary in our dual system

of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation. Rose v. Lundy, 455 U.S. 509, 518 (1982). Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid the federal courts in their review of a § 2254 petition. Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995). A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts. Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in seeking state relief, since it is well-settled that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court." Parker v.Kelchner, 429 F.3d 58, 63 (3d Cir. 2005).

While this exhaustion requirement compels petitioners to have previously given the state courts, a fair "opportunity to apply controlling legal principles to the facts bearing upon [the petitioner's] constitutional claim," Picard v. Connor, 404 U.S. 270, 276 (1971), this requirement is to be applied in a commonsense fashion. Thus, the exhaustion requirement is met when a petitioner submits the gist of his federal

complaint to the state courts for consideration, without the necessity that the petitioner engage in some "talismanic" recitation of specific constitutional claims. Evans, 959 F.2d at 1230-33. Similarly, a petitioner meets his obligations by fairly presenting a claim to the state courts, even if the state courts decline to specifically address that claim. See Dye v. Hofbauer, 546 U.S. 1(2005) (per curiam); Johnson v. Pinchak, 392 F.3d 551, 556 (3d Cir. 2004).

**(b)**     **The Exhaustion Requirement and Mixed Petitions Containing Exhausted and Unexhausted Claims**

Oftentimes, these petitions may either contain wholly unexhausted claims or contain what are referred to as "mixed" claims: petitions with both exhausted and unexhausted claims. In such instances, the court has several courses available to it. First, the court can dismiss the petition without prejudice, so that the petitioner can either return to state court and totally exhaust his claims, or proceed in federal court on a petition which raises only wholly exhausted issues. Rose v. Lundy, 455 U.S. 509 (1982). This total exhaustion approach facilitates the important goals of federalism and comity that are essential to the exhaustion rule, and allows for complete legal and factual development of these cases in the state legal system before petitions are presented in federal court.

However, because strict compliance with this total exhaustion rule can create procedural dilemmas for some petitioners who may be unable to fully exhaust state

remedies on mixed claim petitions before the one-year statute of limitations prescribed for state habeas petitions elapses, the courts have adopted another procedure which may be employed in a limited number of cases, a "stay and abeyance" procedure in which the federal habeas petition is stayed pending exhaustion of state remedies by the petitioner. Rhines v. Weber, 544 U.S. 269 (2005).

Yet, while granting a stay and abeyance is an available procedure, it is not a preferred course of action in these cases. Because a "stay and abeyance" procedure, if used too frequently, can undermine the policies favoring prompt and orderly resolution of state habeas petitions, the Supreme Court has held that:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

Rhines v. Weber, 544 U.S. at 277. Therefore, in order to qualify for a stay and abeyance a petitioner should "satisf[y] the three requirements for a stay as laid out in Rhines: good cause, potentially meritorious claims, and a lack of intentionally dilatory litigation tactics." Heleva v. Brooks, 581 F.3d 187, 192 (3d. Cir.2009).

### B. **Miller's Petition Should be Stayed and Held in Abeyance Pending The Completion of Miller's State PCRA Litigation**

These settled legal tenets suggest the proper approach to be taken in this case. At the outset, it is evident that the exhaustion doctrine applies to this case since Miller's federal habeas petition clearly contains some legal claims as to which Miller has not exhausted his state legal remedies. Indeed, the traverse filed by Miller in this federal habeas corpus proceeding expressly incorporates by reference the claims made in Miller's unresolved second amended PCRA petition which is still pending in the state courts. (Doc. 23, p.34.) Thus, Miller acknowledges that there is a significant, and substantial overlap between the issues presented in this federal habeas petition, and the issues currently pending before the state courts on Miller's 2010 second amended state PCRA petition. Given the identity of issues in these two pending cases, Miller's federal pleading is the very model of a mixed or partially unexhausted petition which the court ordinarily should either stay or dismiss without prejudice, so that he can either return to state court and totally exhaust these claims, or proceed in federal court on a petition which raises only wholly exhausted issues. Rose v. Lundy, 455 U.S. 509 (1982).

Miller seeks to avoid this outcome by first arguing that exhaustion of these state remedies on his part should be excused since the delay in litigating this case

demonstrates the futility of exhausting those state remedies. While there has been substantial delay here, at present we are not prepared to recommend that the Court excuse Miller from satisfying this exhaustion requirement since it is evident that the state courts are now diligently pursuing this PCRA litigation. Because of the strong policies favoring exhaustion of state remedies, petitioners who seek to be excused from this requirement must make an exacting showing. As the United States Court of Appeals for the Third Circuit has aptly observed:

> Under ordinary circumstances, a federal court may not entertain a petition for a writ of habeas corpus unless the petitioner has first presented each of his claims to the state's highest tribunal. See 28 U.S.C. §§ 2254(b), (c); Rose v. Lundy, 455 U.S. 509, 515-16(1982). Exhaustion, however, is not a jurisdictional matter but a matter of comity. See Story v. Kindt, 26 F.3d 402, 405 (3d Cir.1994). Federal courts need not defer to the state judicial process when there is no appropriate remedy at the state level or when the state process would frustrate the use of an available remedy. Id.; 28 U.S.C. § 2254(b)(1)(B). We have held that "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable." Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir.1986). The existence of an inordinate delay does not automatically excuse the exhaustion requirement, but it does shift the burden to the state to demonstrate why exhaustion should still be required. Story, 26 F.3d at 405 (noting that this burden is "difficult to meet").

Lee v. Stickman, 357 F.3d 338, 341 (3d Cir. 2004).

In defining what type of delay constitutes an " inexcusable or inordinate delay" which may justify excusing the exhaustion requirement, the courts have looked at delays of years, not months. Thus, as the appellate court has explained:

> We stated in Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir.1986), that "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable." In that case, thirty-three months had passed after the petitioner's PCRA filing without resolution. Id. This, we found, excused the petitioner's failure to exhaust his state court remedies. Id. at 356. The thirty-three month delay in Wojtczak remains the shortest delay held to render state collateral proceedings ineffective for purposes of the exhaustion requirement.

Cristin v. Brennan, 281 F.3d 404, 411 (3d Cir. 2002)(refusing to excuse exhaustion in the face of 27 month delay). See, e.g., Coss v. Lackawanna County Dist. Att'y, 204 F.3d 453, 460 (3d Cir.2000) (en banc) (seven year delay), rev'd on other grounds, 532 U.S. 394 (2001); Story v. Kindt, 26 F.3d 402, 406 (3d Cir.1994) (nine year delay).

Here, while the overall delay in the litigation of this PCRA case has been substantial, that delay appears to have largely stemmed from confusion at the outset of this PCRA litigation in 2003. Once that confusion was clarified by Miller through the filing of a second amended PCRA petition in 2010, the state courts have moved promptly, scheduling conferences, conducting proceedings, entering orders, and appointing counsel in the PCRA case. In light of the level of activity that has been displayed by the Commonwealth following Miller's 2010 PCRA filing, we cannot say

that "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable." Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir.1986). Quite the contrary, these recent developments strongly suggest that we should not accept Miller's invitation to excuse him from complying with this exhaustion requirement. As the United States Court of Appeals for the Third Circuit has observed:"[i]n deciding whether to waive the exhaustion requirement, however, we generally take into account recent progress in the state court. When a previously stalled state action begins moving again, we generally hold that a state remedy is, once again, available, and that the petitioner should exhaust it." Luckett v. Folino, 264 F.App'x 171, 173(3d Cir. 2008)(citations omitted). Therefore, it is recommended that the Court decline Miller's invitation to declare the state PCRA process "effectively unavailable," Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir.1986), and excuse compliance with this process.

At the same time, given the vagaries of this past state court litigation, we also believe that the Court should decline the Respondents' suggestion that Miller's petition simply be dismissed as a mixed or unexhausted petition. Indeed, in a case such as this, where state proceedings had once stalled, but now appear to be proceeding forward, we are encouraged to stay the federal proceedings in favor of the completion of the state legal process. As the United States Court of Appeals for the Third Circuit

has observed in this regard: "Where, as here, previously-stalled state proceedings have resumed, we have 'instructed district courts to stay their consideration of habeas petitions....' Cristin v. Brennan, 281 F.3d 404, 411 (3d Cir.2002) (citing Walker v. Vaughn, 53 F.3d 609, 615 (3d Cir.1995) ('As a matter of general practice, we assume that a district court which has excused exhaustion but has not yet embarked upon proceedings of substance will stay its hand once there is reliable evidence that the state action has been reactivated.'))." Wallace v. Dragovich, 143 F.App'x. 413, 418 (3d Cir. 2005).

Moreover, in this case Miller can otherwise satisfy the requirements prescribed by the Supreme Court for a stay and abeyance. As a legal matter, Miller can avoid the sanction of dismissal, and secure a stay, if he can "satisf[y] the three requirements for a stay as laid out in Rhines: good cause, potentially meritorious claims, and a lack of intentionally dilatory litigation tactics." Heleva v. Brooks, 581 F.3d 187, 192 (3d. Cir.2009). Mindful of the fact that "stay and abeyance should be available only in limited circumstances," Rhines v. Weber, 544 U.S. at 277, we recommend that the Court find that Miller is entitled to a stay pending litigation of these unexhausted state claims.

Our recommendation that this action be stayed, rather than dismissed, is shaped in part by our concern that "good cause" exists for the entry of a stay in this case. The

stay and abeyance procedure adopted by the Supreme Court in <u>Rhines</u> was intended

to avoid unfair prejudice to habeas petitioners in those limited cases where completion

of the habeas exhaustion requirement might result in an untimely federal petition

under the one-year statute of limitations which applies to state habeas actions under

28 U.S.C. § 2244. Given the concerns which motivate this limited stay and abeyance

policy, "good cause" typically requires a showing that requiring exhaustion will result

in a prisoner's petition being time-barred under § 2244. <u>See</u> <u>Heleva v. Brooks,</u> 581

F.3d 187, 192 (3d. Cir.2009).

In this case, we have grave concern that a dismissal of this partially unexhausted

petition would result in the statute of limitations ultimately barring litigation of these

claims on their merits once Miller has properly exhausted her state remedies. The

danger which the statute of limitations presents to this particular *pro se* litigant can be

readily illustrated by a brief consideration of how the statute of limitations would

apply to this case. The Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2244 established a one-year statute of limitations on the

filing of habeas petitions by state prisoners. In pertinent part, § 2244(d)(1) provides

as follows:

> A 1-year period of limitation shall apply to an application for a writ of
> habeas corpus by a person in custody pursuant to the judgment of a State
> court. The limitation period shall run from the latest of-

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

See Miller v. New Jersey State Dept. of Corrections 145 F.3d 616, 617 (3d Cir.1998).

The calculation of this limitations period is governed by a series of well-defined rules. At the outset, these rules are prescribed by statute, specifically 28 U.S.C. § 2244(d)(2), which provides that:

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000).

In assessing § 2244(d)(2)'s tolling provision relating to the time when a case is "pending" state review, it is also clear that "the term 'pending' must include the time

between a court's ruling and the timely filing of an appeal, [and] 'pending' must include the time during which an appeal could be filed even if the appeal is not eventually filed." Swartz, 204 F.3d at 424. Thus, the courts have construed this tolling provision in a forgiving fashion, one which enables petitioners to toll their filing deadlines for the time periods in which they could have sought further appellate review of their cases, even if they did not, in fact, elect to seek such review. For example, with respect to a petitioner like Miller, who pursued a direct appeal to the state Supreme Court:

> Section 2244 of AEDPA states that the statute of limitations begins on "the date on which the judgment [to be reviewed] became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Usually that provision is applied to hold that the limitations period runs from the date when a prisoner's time for seeking certiorari from the United States Supreme Court expired. See, e.g., Kapral v. United States, 166 F.3d 565, 575 (3d Cir.1999).

Heleva, 581 F.3d at 192-193. Therefore, this statutory tolling period embraces the duration of all of Miller's direct state criminal appeals, plus an additional 90 days to allow for a potential petition for writ of certiorari to the United States Supreme Court, a writ that Miller never sought. All of this time would be tolled under § 2244(d)(2) from any statute of limitations calculations. See Swartz, 204 F.3d at 419. In this case application of these principles would mean that Miller's federal habeas petition should have been filed within one year and 90 days after the denial of his petition for

-19-

allowance of appeal by the Pennsylvania Supreme Court, or on or about December 22, 2003.

While Miller did not file a federal habeas petition within this time period, he did file a state PCRA petition in September or October 2003. Normally, a "properly filed application for State post-conviction or other collateral review" also tolls AEDPA's one-year limitations period. However, for purposes of tolling the federal habeas statute of limitations, a "properly filed application for State post-conviction or other collateral review" only includes applications which are filed in a timely fashion under state law. Therefore, if the petitioner was delinquent in seeking state collateral review of his conviction, that tardy state pleading will not be considered a "properly filed application for State post-conviction or other collateral review" and will not toll the limitations period. Pace v. DiGuglielmo, 544 U.S. 408, 412-14 (2005); Long v. Wilson, 393 F.3d 390, 394-95 (3d. Cir. 2004).

Beyond this tolling period mandated by statute, it has also been held that AEDPA's one-year limitations period is not a jurisdictional bar to the filing of habeas petitions; Miller, 145 F.3d at 617-18, and, therefore, is subject to equitable tolling. Id. at 618-19. Yet, while equitable tolling is permitted in state habeas petitions under AEDPA, it is not favored. As the United States Court of Appeals for the Third Circuit has observed: "[E]quitable tolling is proper only when the 'principles of equity would

make [the] rigid application [of a limitation period] unfair.' Generally, this will occur when the petitioner has 'in some extraordinary way ... been prevented from asserting his or her rights.' The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' Mere excusable neglect is not sufficient." Id. at 618-19 (citations omitted). Indeed, it has been held that only:

> [T]hree circumstances permit[] equitable tolling: if
> (1) the defendant has actively misled the plaintiff,
> (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or
> (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum.

Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001)

Applying these principles, it is apparent that Miller could face a grave risk that the federal one-year statute of limitations would preclude him from having this petition considered on its merits if this case is dismissed rather than stayed. Specifically, at present it appears that at least nine months have elapsed on AEDPA's statute of limitations, and further tolling might be subject to a determination of whether Miller's state PCRA petitions were timely filed. In this setting, where there is substantial uncertainty regarding the application of AEDPA's statute of limitations to Miller's petition, it appears that there is "good cause" justifying a stay in this case. Therefore, dismissal of this petition without prejudice to Miller fully exhausting his

state remedies may very well result in the federal statute of limitations barring any further consideration of this matter, since Miller's case currently may be poised on the precipice of this limitations period. Since it appears that dismissal of Miller's petition while he fully exhausts his state claims could ultimately cause him to run afoul of AEDPA's statute of limitations, Miller has shown "good cause" justifying a stay and abeyance in this case.

As for the remaining factors which we must consider in deciding whether a stay is appropriate, none of these factors weighs in such a compelling way against the entry of a stay in this case as to overcome the "good cause" that is shown here. In addition to determining whether "good cause" exists for staying this case, we must also examine two other criteria established by the Supreme Court in Rhines for entry of a stay, making a determination regarding whether the petition contains "potentially meritorious claims, and [whether the record shows] a lack of intentionally dilatory litigation tactics." Heleva v. Brooks, 581 F.3d 187, 192 (3d. Cir.2009).

Neither of these factors calls for the denial of a stay in this case, where good cause clearly exists to stay this matter pending completion of the state litigation. For example, on the current, incomplete record we cannot say that Miller's claims are completely lacking in merit. Therefore, it is presently unclear whether Miller's case presents any "potentially meritorious claims." Id.

In addition, we cannot find that Miller has indulged in "intentionally dilatory litigation tactics." <u>Heleva v. Brooks,</u> 581 F.3d 187, 192 (3d. Cir.2009). Quite the contrary, Miller appears to have diligently and timely asserted his right to seek review of his convictions, both in state courts and now in federal court. Therefore, this factor does not call for denial of a stay, particularly when it is so readily apparent that refusing to stay this case might deny Miller any further, meaningful opportunity to have his federal claims heard due to the likely application of AEDPA's one-year statute of limitations to this case if this petition is dismissed rather than stayed.

## III. <u>**Recommendation**</u>

In short, while Miller's federal habeas petition clearly embraces multiple claims which have not been properly exhausted in the state legal system, Miller has made a showing of good cause that would permit the entry of a stay in this case. Therefore, the appropriate course here is to stay this petition and permit Miller to return to state court and totally exhaust his claims before proceeding further with this petition. <u>Rose v. Lundy,</u> 455 U.S. 509 (1982).

Further, in recognition of the delays which have previously plagued this state court litigation, IT IS RECOMMENDED that the parties be required to provide status reports every 90 days on the progress of this state PCRA litigation so this Court can

make an informed judgment regarding whether to excuse this exhaustion requirement and lift this stay at some time in the future.

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254, and the Response in Opposition to this Petition, IT IS RECOMMENDED that the Petition be STAYED AND HELD IN ABEYANCE, pending completion of the state litigation of Miller's PCRA petition.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 3d day of February, 2011.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge