## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GARY ADAM MILLER,** | : | **Civil No. 4:10-CV-51** |
| | : | |
| **Petitioner,** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **MARIROSA LAMAS, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

This case calls upon us to consider, once again, the interplay of several basic values embodied in our system of justice, as those values relate to a state criminal defendant who seeks to collaterally challenge his conviction in federal court.  In this setting, one of the statutory prerequisites to a state prisoner obtaining habeas corpus relief in federal court is that the prisoner must first "exhaust[] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).   While this exhaustion requirement addresses important institutional interests of federalism and comity, occasionally "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable."  Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir.1986). In such instances, state prisoners may petition federal courts to forego compliance with this exhaustion requirement notwithstanding the important values promoted by these exhaustion principles.

In the instant case, the Petitioner, Gary Miller, filed a federal habeas corpus petition in 2010 which was a model of a mixed or partially unexhausted petition, since all of the parties conceded that there was still pending in the state courts an unresolved state court petition brought under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. §§ 9541 et seq., ("PCRA"), which raised issues that are identical to some of those set forth in Miller's federal habeas corpus petition.  Miller took this action because his state post-conviction proceedings had apparently been stalled for several years. However, upon the filing of this petition, and particularly following the entry of an order by this Court directing state authorities to provide status reports on the progress of this litigation, substantial steps have been taken to resolve this pending state PCRA litigation.  In the face of this renewed activity by the state courts to address Miller's claims, we stayed further action on this federal habeas corpus petition, pending the resolution of the related state litigation.  (Doc. 39)[1]

Miller has now filed a motion to lift this stay order, and proceed with litigation of this unexhausted petition in federal court.  (Doc. 46)  Miller makes this request, even though court records reveal that Miller has received five hearings, and three

---

[1]Given the nature of this stay order, we are addressing this motion to vacate this stay through a report and recommendation in order to afford Miller every opportunity to be heard on this question. See Reynaga v. Cammisa, 971 F.2d 414 (9th Cir. 1992)(report and recommendation prepared regarding stay of federal case pending outcome of related state court litigation).

conference with the Court on his state petition over the past twelve months, and that petition appears to be proceeding to a resolution in the foreseeable future, one which may afford relief to Miller, and certainly will afford greatly clarity to the claims advanced by Miller both in the state litigation and in the federal habeas corpus petition.

Given the demonstrable progress which has been made in this state litigation, for the reasons set forth below, it is recommended that this is a case where the proper course of action would be to continue to stay the petition and hold it in abeyance pending completion of the state criminal litigation.  However, in recognition of the delays which have previously plagued this state court litigation, it is further recommended that the parties continue to be required to provide status reports every 90 days on the progress of this state PCRA litigation so this Court can make an informed judgment regarding whether to excuse this exhaustion requirement at some time in the future.

## II.   Statement of Facts and of the Case

### A.   Miller's Crime of Conviction

This matter arises out of a home-invasion robbery which occurred on December 22, 2000, in which Miller and a co-defendant are alleged to have invaded the home of the adult married victims and their five minor children, stripped a 9 year-old child

naked, held a knife to the child's throat, and then stole cash, a check and a vehicle before fleeing. (Doc. 14, p.6) Apprehended after a police pursuit, it is alleged that Miller confessed to his involvement in these events during a hospital interview.(Id.)

Charged with multiple counts of kidnaping, robbery, terroristic threats, burglary and theft, Miller executed a negotiated, counseled plea agreement to three counts of robbery, one count of conspiracy to commit robbery, one count of robbery of a motor vehicle, one count of burglary, one count of kidnaping, one count of interference with the custody of children, one count of theft by unlawful taking, three counts of terroristic threats, and two counts of unlawful restraint. As part of this plea agreement, Miller agreed to the imposition of a sentence of twenty to forty years imprisonment and the Commonwealth agreed to dismiss the additional charges lodged against him.

According to the Respondents, prior to the entry of this guilty plea, Miller's counsel took steps to ensure that his client understood the consequences of this plea. Specifically, counsel requested and obtained funds for a psychological evaluation to determine competency and sanity. Only after that report of the examining expert indicated no basis to challenge either his competency or his sanity, did Miller enter into this plea agreement. (Id., p.7)

On June 15, 2001, Miller entered his guilty plea to these charges pursuant to the plea agreement entered into by the parties in this case. (Id.) As part of these

proceedings, Miller executed a written guilty plea colloquy in addition to orally tendering a plea during a trial court colloquy.  On July 12, 2001, Miller was sentenced for his role in this home invasion robbery and kidnaping, receiving the twenty to forty year jail term previously specified in his plea agreement with the Commonwealth. (Doc. 15-2, ¶4)

### B.   Miller's Direct Appeal

Miller then appealed this conviction and sentence to the Pennsylvania Superior Court, arguing that his guilty plea colloquy was defective and that his trial counsel ineffective in failing to move to allow him to withdraw this guilty plea. (Doc 15-5) On April 24, 2002, the Superior Court affirmed Miller's conviction and sentence, rejecting his claims that his guilty plea colloquy was defective and his trial counsel ineffective in failing to move to withdraw this guilty plea.  (Doc. 15-15) Miller sought leave to appeal this ruling to the Pennsylvania Supreme Court, which denied his petition for allowance of appeal on September 24, 2002.  (Doc. 15-14) With the denial of this petition by the Pennsylvania Supreme Court, Miller's direct state appeal of this conviction and sentence drew to a close.

### C.   Miller's PCRA Proceedings, 2003 -2010, and Miller's Federal Habeas Corpus Petition

With his direct appeals exhausted, Miller then began to pursue relief in the state courts through a post-conviction relief action petition.  According to Miller these

efforts began with his filing of a state Post-Conviction Relief Act petition in September 2003.  However, the state court docket shows no record of a filing prior to October 2003.  This confusion, which marked Miller's state PCRA petition at its inception, persisted for a number of years, with Miller lodging various *pro se* filings which were not initially acted upon by the state court.

Ultimately, the confusion surrounding Miller's *pro se* state court pleadings was clarified in January of 2010, when Miller filed this federal habeas corpus petition, and concurrently filed a second amended PCRA petition in the Court of Common Pleas of Perry County.  (Docs. 1, 15-4)  Once Miller renewed his state PCRA petition in January of 2010, the state court responded to Miller's requests in a consistent, and prompt, fashion.  (Doc. 35)  Thus, after receiving a battery of *pro se* pleadings from Miller, in May 2010, the court scheduled a conference with the Petitioner.  (Id.)  This conference was held on July 21, 2010, and at this conference the court attempted to address some of Miller's concerns.  (Id.)  It appears that the state court is continuing to promptly address matters in this case.  In fact, on September 15, 2010, the court entered an order ruling upon some of Miller's requests.  (Id.)  Most recently, on January 13, 2011, the state court appointed counsel to assist Miller in framing and litigating the issues presented by his 2010 PCRA petition.  (Id.)

While Miller and the Commonwealth Respondents have been actively litigating this state PCRA petition, they have also briefed the issues raised by Miller in his pending federal habeas corpus petition. (Docs. 1, 14, 15, and 23) These submissions revealed that many of the issues presented in this federal habeas corpus petition also appear to be the subject of Miller's pending state PCRA litigation. Indeed, Miller's submissions in this federal case closely paralleled the arguments made in his state PCRA petition. In fact, the traverse filed by Miller in this federal habeas corpus proceeding expressly incorporates by reference the claims made in Miller's unresolved second amended PCRA petition which is still pending in the state courts. (Doc. 23, p.34) Thus, Miller himself acknowledged that there was a significant and substantial overlap between the legal issues presented in this federal habeas petition, and those issues currently pending before the state courts on Miller's 2010 second amended state PCRA petition.

Presented with this unexhausted federal habeas corpus petition filed by a state prisoner whose state Post-Conviction litigation had been stalled for a number of years, but now had regained focus and momentum, we initially recommended that the federal proceedings in this case be stayed, and held in abeyance, pending completion of the related state court litigation on Miller's PCRA petition. (Doc. 37) However, we also recommended that the parties submit reports every 90 days, so we could assess the

continuing progress of these state PCRA proceedings. (Id.) In March 2011, this recommendation was adopted by the District Court.  (Doc. 39)

**D.     The Progress of Miller's PCRA Proceedings, 2011 to Present, and Miller's Motion to Vacate This Court's  Stay**

Since March 2011 the parties have complied with this directive, filing reports which reflect that the state courts have conducted three conferences, and five hearings relating to Miller's state PCRA case since March 24, 2011.  (Doc. 48-1)  Moreover, additional hearings are scheduled in this case by the state courts on May 4, 2012. (Id.) Thus, while the parties have differing views regarding the progress of this litigation, and Miller is plainly dissatisfied with the state court rulings to date, it is undeniable that significant steps have been, and are being taken by state authorities to permit Miller to fully litigate these PCRA claims.

Despite this progress, Miller has now moved to vacate the stay, and seeks to have this Court intervene in this case, which is the subject of active state PCRA proceedings.  (Doc. 46)  This motion has been fully briefed by the parties, and is now ripe for resolution.  (Docs. 46 and 47)  On these facts, where extensive and on-going state proceedings are now underway, we cannot say that we are presently confronted with  "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable." Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir.1986).  Since it appears that the state PCRA remedy remains actively

available to Miller, and since full use of this remedy promotes important interests that are integral to federal law in this field, it is recommended that Miller's motion to lift this stay be denied, without prejudice to renewal of this motion in the future should the state proceedings become  subject to further delays which render the state remedy effectively unavailable.

## II.   Discussion

### A.   Where State PCRA Proceedings That Were Previously Stalled Are Now Demonstrably Moving Forward, This Court Should Stay Further Consideration of the Petitioner's Unexhausted State PCRA Petition

As we have previously noted, a state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> **(a)** The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

> **(A)** the applicant has exhausted the remedies available in the courts of the State;
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b).

In order to obtain habeas corpus relief state prisoners must meet exacting substantive and procedural benchmarks.  At the outset, a petition must satisfy exacting substantive standards to warrant relief.  Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts.  Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See, e.g., Reed v. Farley, 512 U.S. 339, 354 (1994).  Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Priester v. Vaughan, 382 F.3d 394, 401-02 (3d Cir. 2004).

Furthermore, state prisoners seeking relief under Section 2254 must also satisfy specific, and precise, procedural standards.  Among these procedural prerequisites is a requirement that the petitioner "has exhausted the remedies available in the courts of the State" before seeking relief in federal court.  28 U.S.C. § 2254(b).  In instances where a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus.  See Whitney v. Horn, 280 F.3d 240, 250 (3d Cir. 2002).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights.  O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999).  As the Supreme Court has aptly observed:  "a rigorously enforced total exhaustion rule" is necessary in our dual system of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation.  Rose v. Lundy, 455 U.S. 509, 518 (1982).  Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid the federal courts in their review of a § 2254 petition.  Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995).  A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the

claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts. Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in seeking state relief, since it is well-settled that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court." Parker v.Kelchner, 429 F.3d 58, 63 (3d Cir. 2005).

While this exhaustion requirement compels petitioners to have previously given the state courts, a fair "opportunity to apply controlling legal principles to the facts bearing upon [the petitioner's] constitutional claim," Picard v. Connor, 404 U.S. 270, 276 (1971), this requirement is to be applied in a commonsense fashion. Thus, the exhaustion requirement is met when a petitioner submits the gist of his federal complaint to the state courts for consideration, without the necessity that the petitioner engage in some "talismanic" recitation of specific constitutional claims. Evans, 959 F.2d at 1230-33. Similarly, a petitioner meets his obligations by fairly presenting a claim to the state courts, even if the state courts decline to specifically address that claim. See Dye v. Hofbauer, 546 U.S. 1 (2005) (per curiam); Johnson v. Pinchak, 392 F.3d 551, 556 (3d Cir. 2004).

Miller's case presents a special circumstance under the exhaustion doctrine which applies to federal habeas corpus petitions. What makes this case unusual is the confluence of two events: First, the state's initial inaction with respect to Miller's state PCRA petition, which spanned from 2003 through 2010; and, second, the substantial diligence which the Commonwealth has now displayed in addressing this petition since 2010, and particularly during the past year when no less than five hearings and three conferences have been conducted in this state case. Thus, while there was an initial, and substantial delay here, it is evident that the state courts are now diligently pursuing this PCRA litigation.

In this unique setting, where state proceedings that were once stalled have resumed with vigor, the strong policies favoring exhaustion of state remedies place an exacting burden on petitioners who seek to be excused from this exhaustion. As the United States Court of Appeals for the Third Circuit has aptly observed:

> Under ordinary circumstances, a federal court may not entertain a petition for a writ of habeas corpus unless the petitioner has first presented each of his claims to the state's highest tribunal. See 28 U.S.C. §§ 2254(b), (c); Rose v. Lundy, 455 U.S. 509, 515-16(1982). Exhaustion, however, is not a jurisdictional matter but a matter of comity. See Story v. Kindt, 26 F.3d 402, 405 (3d Cir.1994). Federal courts need not defer to the state judicial process when there is no appropriate remedy at the state level or when the state process would frustrate the use of an available remedy. Id.; 28 U.S.C. § 2254(b)(1)(B). We have held that "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable." Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir.1986). The existence of an inordinate delay does not

automatically excuse the exhaustion requirement, but it does shift the burden to the state to demonstrate why exhaustion should still be required. <u>Story</u>, 26 F.3d at 405 (noting that this burden is "difficult to meet").

<u>Lee v. Stickman</u>, 357 F.3d 338, 341 (3d Cir. 2004).

In defining what type of delay constitutes an "inexcusable or inordinate delay" which may justify excusing the exhaustion requirement, the courts have looked at delays of years, not months. <u>Cristin v. Brennan</u>, 281 F.3d 404, 411 (3d Cir. 2002)(refusing to excuse exhaustion in the face of 27 month delay). <u>See, e.g.</u>, <u>Coss v. Lackawanna County Dist. Att'y</u>, 204 F.3d 453, 460 (3d Cir.2000) (en banc) (seven year delay), <u>rev'd on other grounds</u>, 532 U.S. 394 (2001); <u>Story v. Kindt</u>, 26 F.3d 402, 406 (3d Cir.1994) (nine year delay).  Here, the initial delay experienced by Miller was substantial and fully justified the Petitioner initially turning to the federal courts by filing a federal habeas corpus petition.

However, there is a corollary to this principle.  When the "previously-stalled state proceedings have resumed" and, "there is reliable evidence that the state action has been reactivated," <u>Walker v. Vaughn</u>, 53 F.3d 609, 615 (3d Cir.1995); <u>Wallace v. Dragovich</u>, 143 F. App'x. 413, 418 (3d Cir. 2005); <u>Cristin v. Brennan</u>, 281 F.3d 404, 411 (3d Cir.2002), it has been held that "[w]hen a previously stalled state action begins moving again, we [should] hold that a state remedy is, once again, available, and that the petitioner should exhaust it." <u>Luckett v. Folino</u>, 264 F.App'x 171, 173(3d

Cir. 2008)(citations omitted).   Therefore, where, as here, previously-stalled state proceedings have resumed, we should "stay . . .  consideration of [this] habeas petition[]...." Cristin v. Brennan, 281 F.3d 404, 411 (3d Cir.2002).

In this case, while the overall delay in the litigation of this PCRA case has been substantial, that delay appears to have largely stemmed from confusion at the outset of this PCRA litigation in 2003.  Once that confusion was clarified by Miller through the filing of a second amended PCRA petition in 2010, the state courts have moved promptly, scheduling conferences, conducting proceedings, entering orders, and appointing counsel in the PCRA case.  While Miller plainly remains dissatisfied with the pace and progress of this litigation, the state court litigation, which is actively on-going, serves important purposes, purposes that were recognized by Congress when it mandated exhaustion of state remedies as a prerequisite to litigation in federal court. First, that state PCRA litigation may result in relief for Miller.  Moreover, the process of this litigation allows for factual and legal development of Miller's claims, and promotes informed, and fair decision making by state and federal courts.

Given the important values promoted by this on-going litigation, and in light of the level of activity that has been displayed by the Commonwealth during the past year in addressing and attempting to resolve Miller's claims, we cannot say on the present record that "inexcusable or inordinate delay by the state in processing claims for relief

may render the state remedy effectively unavailable." <u>Wojtczak v. Fulcomer</u>, 800 F.2d 353, 354 (3d Cir.1986). Quite the contrary, these recent developments strongly suggest that we should not accept Miller's invitation to excuse him from complying with this exhaustion requirement, and lift the current stay order. As the United States Court of Appeals for the Third Circuit has observed in this circumstance: "[i]n deciding whether to waive the exhaustion requirement, however, we generally take into account recent progress in the state court. When a previously stalled state action begins moving again, we generally hold that a state remedy is, once again, available, and that the petitioner should exhaust it." <u>Luckett v. Folino</u>, 264 F. App'x 171, 173(3d Cir. 2008)(citations omitted). Therefore, it is recommended that the Court continue to decline Miller's invitation to declare the state PCRA process "effectively unavailable," <u>Wojtczak v. Fulcomer</u>, 800 F.2d 353, 354 (3d Cir.1986), and excuse compliance with this process.

At the same time, given the vagaries of this past state court litigation, we also believe that the Court should continue to require the parties to provide status reports every 90 days on the progress of this state PCRA litigation so this Court can make an informed judgment regarding whether to excuse this exhaustion requirement and lift this stay at some time in the future.

### III. <u>Recommendation</u>

Accordingly, for the foregoing reasons, upon consideration of the Petitioner's Motion to vacate the Stay previously entered in this case, (Doc. 46), IT IS RECOMMENDED that the Petition continue to be STAYED AND HELD IN ABEYANCE, pending completion of the state litigation of Miller's PCRA petition, and the Court should continue to require the parties to provide status reports every 90 days on the progress of this state PCRA litigation so this Court can make an informed judgment regarding whether to excuse this exhaustion requirement and lift this stay at some time in the future.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 24th day of April 2012.

<u>**_S/Martin C. Carlson_**</u>
Martin C. Carlson
United States Magistrate Judge